UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO. 15-11935

WILLIAM MATTHEW BLACK                    CHAPTER 11

   DEBTOR                                              SECTION "B"
*********************************************************************

GALLINGHOUSE & ASSOCIATES, INC.,
G & A PUBLISHING, INC,
JOANNE GALINGHOUSE, AND
WALTER GALLINGHOUSE

   PLAINTIFFS

VERSUS                                                   ADV.P. NO. 15-1071

WILLIAM MATTHEW BLACK

   DEFENDANT

                                                            *Consolidated for trial with*

WILLIAM MATTHEW BLACK

   PLAINTIFF

VERSUS                                                   ADV.P. NO. 15-1073

WALTER GALLINGHOUSE, JOANNE
GALLINGHOUSE, G & A PUBLISHING, INC,
AND GALLINGHOUSE & ASSOCIATES, INC.

   DEFENDANTS

## <u>MEMORANDUM OPINION</u>

This matter came before the court on June 6 and 7, 2016 as a trial on the complaint

of Joanne and Walter Gallinghouse, Gallinghouse & Associates, Inc., and G & A

Publishing ("the Gallinghouses") against William Matthew Black ("Black") seeking nondischargeability of a debt under 11 U.S.C. §§ 523(a)(4), (6), (7), (13) and (17), and on a separate adversary complaint filed by Black against the Gallinghouses seeking to avoid a preferential transfer under 11 U.S.C. §547. Additionally, the court heard Black's objections to proofs of claim numbers 2, 3, and 4, which had been filed by the Gallinghouses in Black's main bankruptcy case. The two separate adversary proceedings and the objections to the three claims were consolidated for trial by this court.

After considering all of the evidence presented at trial as well as the briefs filed by the parties the court dismisses Black's § 547 preference action and the non-dischargeability actions. The court also denies the objection to proof of claim 2, and recognizes the civil judgment as an unsecured claim in the amount of $547,803.59. Proofs of claim numbers 3 and 4 are identical, and they relate to a state court judgment of restitution entered on March 15, 2012 against Black's ex-wife, Deborah. The total amount of that judgment is $360,719.71 plus judicial interest dating from November 18, 2011, and all costs of the criminal proceeding and subsequent proceedings necessary to enforce the judgment. The objections to proofs of claim numbers 3 and 4 are denied in part, and allowed in part.

## I.   Background Facts

These adversary proceedings and claim objections involve two state court judgments and several different legal issues that all arose out of criminal acts committed

2

by the debtor's ex-wife, Deborah Black.[1]  Mrs. Black was employed first as a

bookkeeper and then as an office manager for Gallinghouse & Associates, Inc. and G&A

Publishing, Inc. ("Gallinghouse Companies").  While in their employment she embezzled

funds from the Gallinghouse Companies.  She was convicted in state court on several

counts of theft/embezzlement, and was sentenced to prison.  After the Gallinghouses

accused Deborah Black of embezzlement, but before she was convicted, Mr. and Mrs.

Black filed a civil suit against the Gallinghouses in state court.[2]  The end result of that suit

was a judgment (the "civil judgment"), but against the Blacks and in favor of the

Gallinghouses. Additionally, in the criminal case against Mrs. Black, there is a judgment

of restitution (the "restitution judgment").[3]

Mr. Black filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code

on July 31, 2015.  The Gallinghouses filed three proofs of claim related to the civil and

restitution judgments.  The Gallinghouses also filed adversary proceeding number 15-

1071 seeking to have the debt owed to them on the state court judgment against Mr.

Black. declared non-dischargeable under several subsections of  11 U.S.C. § 523(a).  Mr.

Black filed adversary proceeding number 15-1073 against the Gallinghouses seeking to

---

[1]  William and Deborah Black were married in 1989 and divorced in July 2012.

[2]  The civil case is William M. Black, et.al. v. Walter Gallinghouse, et.al.  Case No. 2010-14150 G in the 22nd Judicial District Court for the State of Louisiana, which made claims against the Gallinghouses for defamation.

[3]  The criminal case is *State of Louisiana v. Deborah D. Black*, Docket Number 485796 in the 22nd Judicial District Court for the State of Louisiana.

avoid the civil judgment as a preference under 11 U.S.C. § 547.

## II.   <u>Legal Analysis</u>

### A.   The Preference Action under Section 547 of the Bankruptcy Code.

In the adversary complaint against the Gallinghouses, the debtor alleges an

avoidable preference under 11 U.S.C. § 547(b), stemming from the entry of final

judgment in the state court civil suit.[4]  The court finds that there was no avoidable

preference because the elements of § 547(b) have not been met; specifically, <u>there was no</u>

<u>pre-petition transfer to a creditor</u>.

Section 547(b) states:

Except as provided in subsections (c) and (i) of this section, the trustee may
avoid any transfer of an interest of the debtor in property–
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor
    before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made–
        (A) on or within 90 days before the date of the filing of the
petition; or
        (B) between ninety days and one year before the date of the
        filing of the petition, if such crditor at the time of such tansfer
        was an insider; and
    (5) that enables such creditor to receive more than such creditor
would receive if–
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent
        provided by the provisions of this title.
The debtor filed his petition under Chapter 11 of the Bankruptcy Code on July 31,

---

[4]  Adversary No. 15-1073.

2015.  Shortly thereafter, on August 17, 2015, counsel for the Gallinghouses filed a motion for relief from the automatic stay, seeking to allow entry of a final judgment in the state court civil suit in which the trial had already taken place.  This court granted that motion, and on October 14, 2015 the state court judge signed the civil judgment, but it was not recorded in the mortgage or conveyance records of St. Tammany Parish.[5]  The Gallinghouses then filed proof of claim number 2 in this court, attaching a copy of that judgment.  Shortly thereafter, the debtor filed his adversary complaint.

The only transfer the debtor alleges in the adversary complaint is the entry of the state court's judgment on October 14, 2015.  Because the judgment was signed *after* the commencement of the bankruptcy case, the requirement of § 547(b)(4) that the transfer be made on or within 90 days *before* the date of the filing of the bankruptcy petition, has not been met.  Section 547(b) requires all of the elements be proved to show an avoidable transfer, so the debtor's argument that this is an avoidable transfer fails.  The debtor puts forth the argument that because the trial in state court concluded - but for the signing of the judgment - before the filing of the bankruptcy petition, the judgment was somehow incurred during the 90 days period required by §547(b)(4), but cites no case law to support this proposition.  The court does not find persuasive the argument that the findings of the state court judge, or for that matter the judgment itself - particularly because the judgment was not recorded, constitute a "transfer" under §547(b)(4).  The

---

[5]  The order this court entered lifting the automatic stay specifically stated that the stay was lifted to allow only the entry of the judgment, but not any recordation of the judgment in the mortgage or conveyance records of St. Tammany Parish, which would be the usual practice.

court dismisses the debtor's adversary complaint.

### B.    The Objections to the Proofs of Claim.

#### 1.    Proof of Claim Number 2.

Proof of claim number 2[6] is based upon the civil judgment against Mr. and Mrs.

Black entered by the state court in the suit by the Blacks against the Gallinghouses.  The

judgment covers several causes of action and awards varying amounts for those causes of

action.  The judgment is against both Mr. and Mrs. Black.  Relevant here is the portion of

the judgment against both Mr. and Mrs. Black for $393,649.39 for intentional infliction of

emotional distress and $154,154.20 for conversion.  The judgment provides that the

Blacks are solidary obligors with respect to these amounts, which total $547,803.59.  The

remaining amounts of the judgment are against only Mrs. Black for fraud, breach of

fiduciary duty and breach of fidelity.  The Gallinghouses do not contend that the

remaining portions of the civil judgment are part of their claim against Mr. Black.

The debtor raises several arguments in his objection to proof of claim number 2.

First he argues that the civil judgment is duplicative of the restitution judgment.  The

court does not find this argument persuasive.  Not only are there two separate judgments,

but parts of the civil judgment specifically concern Mr. Black, whereas the judgment of

restitution, after amendment as ordered by the First Circuit Court of Appeal, is only

---

[6] Proof of claim 2 was filed on October 27, 2015 and an amended proof of claim 2 was filed the next day on October 28, 2015.  When the court references proof of claim 2 in this opinion, it refers to the amended claim unless otherwise specified.

against Mrs. Black;[7] further, although both judgments contain a judgment against Mrs. Black for $154,154.20, the remainder of the two judgments are for different amounts. The restitution judgment was made executory on March 15, 2012, long before the civil trial in July 2015, and the civil trial court judge was surely aware of the restitution judgment.[8] This court will not go behind a final state court judgment based only on Mr. Black's unsupported argument that the civil judgment is duplicative of the restitution judgment.

The debtor also suggests that proof of claim 2 lacks sufficient documentation. The proof of claim contains a copy of the final state court judgment, and that is sufficient to support the proof of claim in this case. Finally, the debtor makes the argument that the judgment constitutes a voidable preference under § 547 of the Bankruptcy Code. This argument fails for the reasons stated above, i.e., standing alone and unrecorded in the conveyance or mortgage records of St. Tammany Parish it does not effect a transfer of the debtor's interest in property as required by § 547(b).

For the foregoing reasons, the objection to proof of claim number 2, as amended, is overruled, and the claim is allowed as an unsecured claim against the debtor in the full amount of $547,803.59.

## 2.    Proofs of Claim Number 3 and 4.

Proofs of claim numbers 3 and 4 concern the restitution judgment, which is only

---

[7] *State v. Black*, 144 So.3d 1 (La.App. 1 Cir. 2014).

[8] Counsel for the Gallinghouses states in his brief that the restitution judgment was placed into evidence at the civil trial. *See* Main Bankruptcy Case No. 15-11935, (P-51) at p. 2.

against Mrs. Black, and not against the debtor.  The parties ask this court to determine

"the extent to which the restitution judgment is a community debt for which both

members of the former community are liable."[9]  The parties also ask this court to

determine "the extent to which the Thrift Savings plan may be used to satisfy the

Restitution Judgment."[10]  The division of a marital community is generally not a core

matter over which this court would have jurisdiction.[11]  Article III, however, permits

bankruptcy judges to adjudicate *Stern* claims with the parties' knowing and voluntary

consent.[12] It appears quite clear from the pre-trial order and the arguments that the parties

have consented to this court's jurisdiction as they submitted this issue to the court without

any reservations or objections.

Although there are two proofs of claim filed, there is only one underlying

judgment that forms the basis for these two claims.  The March 15, 2012 restitution

judgment against Mrs. Black states it is for "the amounts of $154,154.20 and $206,565.51

---

[9]  Joint Pre-trial Order at p. 4.

[10]  Joint Pre-trial Order at p. 4.  Mr. Black has a Thrift Savings Plan ("TSP") retirement account in his name.  Some of the money in the TSP was community property, but the TSP was not partitioned as part of the Black's divorce proceedings.

[11]  *Stern v. Marshall,* 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (Article III forbids bankruptcy courts to enter a final judgment on claims that seek only to augment the bankruptcy estate and would otherwise exist without regard to any bankruptcy proceeding).

[12]  *Wellness Intern. Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015).  To the extent that it may later be determined that there was not consent, or jurisdiction is otherwise lacking for this court to adjudicate this claim to a final judgment, this memorandum opinion constitutes the court's proposed findings of fact and conclusions of law with respect to proofs of claim number 3 and 4.  *See Executive Benfits Insurance Agency v. Arkison,* 134 S.Ct. 2165, 189 L.Ed.2d. 83 (2014).

(total $360,719.71) respectively, plus judicial interest thereon beginning November 18th, 2011, plus all costs of the criminal proceeding and subsequent proceedings necessary to enforce this judgment..."  Counsel for the Gallinghouses filed two separate proofs of claim, one for each of the two separate amounts listed in the judgment.[13]

The restitution judgment is a final judgment with some interesting procedural history behind it.  The original restitution judgment was amended by the state trial court to provide that Mrs. Black's restitution obligations could be satisfied from Mr. Black's TSP account because the account is, "an asset of the community which existed at the time when the crimes were committed and is therefore subject to collection for the separate or community debt of Deborah D. Black."[14]  After the trial court amended the restitution judgment, Mr. Black appealed to the Louisiana First Circuit Court of Appeals.  The First Circuit annulled the amended restitution judgment and reinstated the original March 15, 2012 judgment on the procedural grounds that the amendment to the judgment was substantive, and therefore not permitted by Louisiana law.[15] A footnote in the First Circuit's Opinion stated that the court did "not reach the issue of whether Mr. Black's TSP would be subject to seizure for purposes of Mrs. Black's restitution obligation."[16]

---

[13] Because there is only one judgment, the court's reasoning as to the two proofs of claim will be the same as to each proof of claim, and the court will treat them as one proof of claim.

[14] Supplemental Executory Judgment of Restitution and Garnishment of a TSP Account, dated June 24, 2013, in Docket No. 485796 in the 22nd Judicial District Court for the State of Louisiana. (Main Bankruptcy Case, (P-69), Exhibit2).

[15] *State v. Black*, 144 So.3d 1 (La.App. 1 Cir. 2014).

[16] *Id.* at 3, n.3.

That issue was by agreement of the parties submitted to this court for decision.[17]

At the trial, the Gallinghouses presented extensive evidence to show that the restitution judgment was a community debt. Testimony by both Mrs. Black as well as numerous bank statements showed that the stolen/embezzled money was deposited into the Blacks' joint account. Mrs. Black's testimony also showed that the money in the joint account was used to buy things for the entire family, including Mr. Black, not just for her separately.[18] The court finds that Mr. Black failed to rebut the presumption under Louisiana Civil Code Article 2161 that all obligations incurred by a spouse during the existence of the community property regime are presumed to be community obligations. The court holds that the restitution judgment is a community debt as defined by Article 2360 of the Civil Code. The court also finds that this is not a situation where Civil Code Article 2363 applies, because Mr. Black and the Black family did receive monetary benefit from the actions of Mrs. Black.[19]

When Mr. and Mrs. Black divorced, she signed an act of donation giving him her interest in the community home.[20] He then sold the home. The Gallinghouses then filed a

---

[17] See text page 8 and footnote 11, *supra*.

[18] The Gallinghouses offered evidence that a part of the stolen funds were used by Deborah Black to purchase a lawnmower for Mr. Black, *(see* Trial Exhibit 228) and to take the family to a resort and to a Six Flags in Texas (*see* Trial Exhibits 230.30 and 230.31).

[19] Louisiana Civil Code Article 2363 states that an obligation resulting from an intentional wrong is a separate obligation to the extent that it does not benefit both spouses, the family, or the other spouse.

[20] Trial Exhibit 227.

state court revocatory action, with the end result being that proceeds from the sale of the

family home are in the registry of the court for the 22nd Judicial District Court for the

State of Louisiana.[21] The parties have asked this court to determine the fate of those

proceeds.[22] Mrs. Black's share of the proceeds from the sale of the family home is one of

two separate pieces of community property identified by the Gallinghouses as potential

estate assets that might be used to satisfy the restitution judgment. The second is the TSP

account.

Accessing the funds in the TSP account is not an easy task. 5 U.S.C. § 8437(e)(3)

establishes the rules regarding when funds may be removed from a TSP account. It states

in part:

> Moneys due or payable from the Thrift Savings Fund to any individual, and
> in the case of an individual who is an employee or Member (or former
> employee or Member), the balance in the account of the employee or
> Member (or former employee or Member) shall be subject to legal process
> for the enforcement of the individual's legal obligations to provide child
> support or make alimony payments as provided for in section 459 of the
> Social Security Act (42 U.S.C. 659), the enforcement of an order for
> restitution under section 3663A of title 18, forfeiture under section
> 8432(g)(5) of this title, or an obligation of the Executive Director to make a
> payment to another person under section 8467 of this title, and shall be
> subject to a Federal tax levy under section 6331 of the Internal Revenue
> Code of 1986.

The Gallinghouses ask the court to find that the restitution judgment, which is

---

[21]  *Black v. Black*, docket no. 2011-16629 in the 22nd JDC for the Parish of St. Tammany,
State of Louisiana.

[22]  At trial and in his post trial brief, Mr. Black never really denied that the Gallinghouses
were entitled to 50% of the money in the registry of the court.

from a state court, is an order for restitution under 18 U.S.C. § 3663(A).  The language of

18 U.S.C. § 3663A(c)(1)(A)(ii)  does not support the Gallinghouse's position:   "This

section shall apply in all sentencing proceedings for convictions of, or plea agreements

relating to charges for, any offense– that is– an offense against property *under this*

*title*..."(emphasis added).  Title 18 of the United States Code is entitled Crimes and

Criminal Procedure.  In order for an offense to be an offense against property under title

18, the defendant (in this case Mrs. Black) would need to be charged with a crime under

title 18.  The crimes Mrs. Black was convicted of were all crimes charged against her

under Louisiana law.  She was never charged under federal law and thus her crimes were

not crimes under title 18.  The court finds that the restitution judgment is not an order for

restitution under 18 U.S.C. § 3663(A).

        This does not end the court's inquiry, however, because the Gallinghouses also

raise an argument under Louisiana Civil Code Article 2357, which states in pertinent part:

> An obligation incurred by a spouse before or during the community
> property regime may be satisfied after termination of the regime from the
> property of the former community and from the separate property of the
> spouse who incurred the obligation.....
>
> If a spouse disposes of property of the former community for a purpose
> other than the satisfaction of community obligations, he is liable for all
> obligations incurred by the other spouse up to the value of that community
> property.

The court has found the restitution judgment to be a community obligation, and it is clear

that the portion of the TSP account that was in existence at the time the petition for

divorce was filed is community funds.[23]   Because the community funds are liable for the

restitution debt, this court recognizes proofs of claim 3 and 4 in the following amounts: 1)

the claim against the TSP in the amount of $186,658.76;[24] and 2) whatever portion of the

funds held in the registry of the court for the 22nd JDC for St. Tammany Parish represent

Mrs. Black's share of the profit from the sale of the community home.[25]

This still does not help the Gallinghouses reach the TSP funds however.   Even

though the parties have asked this court to determine "the extent to which the Thrift

Savings plan may be used to satisfy the Restitution Judgment,"[26]   this court does not think

it prudent to begin issuing orders relating to parties' domestic relations.   The court

declines to issue an order amending the divorce decree and directing the TSP to make

---

[23]   Although the divorce judgment was entered in July 2012, the date the petition for divorce was filed is November 23, 2011.  The Gallinghouses expert valued Mrs. Black's share of the TSP as of the date of divorce petition and then took that amount and updated it to the current share price, placing a value of $186,658.76 on Mrs. Back's share of the TSP.  Mr. Black's attorney stipulated to this expert report.  At trial Mr. Black attempted to put on his own expert regarding the value of Mrs. Black's share of the TSP.  Because Mr. Black's attorney did not comply with FRCP 26(2), and failed to make his expert witness disclosures to opposing counsel prior to the trial, the Gallinghouses' attorney made a motion to exclude Black's expert witness, and the court granted the motion.  Black's expert was allowed to make a proffer of his expert's testimony, but the court did not admit it into evidence.  Because the Gallinghouses' expert's testimony was credible and Black's attorney did not object to it, the court adopts his valuation for purposes of these proceedings.

[24]   $186,658.76 is the value of the funds as of May 12, 2016.  The court will use this number because it does not have an updated figure.  The court recognizes that the value of the TSP continues to change.

[25]   There is $37,150.80 in the registry of the state court.  This court is unclear whether half of that amount is Mrs. Black's community portion or whether the entire amount constitutes Mrs. Black's community portion.  Whichever it is, that amount is recognized as a claim against the bankruptcy estate.

[26]   Joint Pre-trial Order at p. 4.

payments to Mrs. Black.[27]   The court will give the debtor a choice as to how to resolve

this quandary.  Within 21 days from the date the order accompanying this memorandum

opinion becomes final, the debtor may of his own volition seek to amend the state court

divorce decree to provide the language necessary to access the portion of the TSP account

that the court has found to be a community asset.[28]  If the debtor chooses not to do so, the

court is making a factual finding that cause exists for the automatic stay to be lifted so

that the Gallinghouses may seek to have the Blacks' divorce decree amended to allow

them to pursue the community portion of the TSP.  If this is the option the debtor chooses,

the debtor shall pay for any attorney's fees the Gallinghouses incur in pursuing this

course of action.  The debtor's Chapter 11 plan of reorganization shall state which of

these options the debtor is choosing.[29]

Finally, the court addresses the  debtor's brief objecting to proofs of claim 3 and 4,

which is more or less the same brief he filed in his objection to proof of claim number 2;

i.e. that the judgment is duplicative, and that there is insufficient documentation attached

to the proof of claim.  For the reasons already set forth above, these objections do not

---

[27]  5 U.S.C. §§ 8435 (c) and 8467 provide that courts may direct the TSP to make
payments pursuant to "any court decree of divorce, annulment, or legal separation, or the terms of
any court order or court approved property settlement agreement incident to any court decree of
divorce, annulment, or legal separation."

[28]  Because of the restrictions on TSP distributions, it is likely that the divorce decree will
need to be amended to allow the TSP to pay Mrs. Black her share of the community funds, and
then she will have to pay those funds to the Gallinghouses.  If the parties can figure out a way for
the money to go directly to the Gallinghouses, even better.

[29]  Further, the judgment accompanying this opinion requires the debtor to notify this
court, in writing, which option he chooses, within 21 days from the date of the judgment.

persuade the court to grant the objection to the claims..

### C.  Nondischargeability Under Section 523(a)(6) of the Bankruptcy Code.

The Gallinghouses allege that the civil judgment against the debtor is

nondischargeable under 11 U.S.C. § 523(a)(6).  Section 523(a)(6) exempts from

discharge a debt "for willful and malicious injury by the debtor to another entity or to the

property of another entity."  In the case of *In re Miller*, 156 F.3d 598 (5th Cir. 1998), the

Fifth Circuit analyzed the elements of Section 523(a)(6) following the Supreme Court

case of *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998). In

*Miller*, the Fifth Circuit determined that the term "willful and malicious injury" is a

single, unitary concept that has a two-pronged test.[30]  The court held that an injury is

"willful" where there is either an objective substantial certainty of harm or a subjective

motive to cause harm."[31]  The Fifth Circuit further determined that an injury is

"malicious" if it is "an act done with the actual intent to cause injury."[32]  Debts arising

from recklessly or negligently inflicted injuries do not fall within Section 523(a)(6).[33]

As proof of their non-dischargeability action at trial, the Gallinghouses rely solely

on the state court judgment and the portion of the transcript of the proceedings in state

court in which the trial court judge explained the judgment.  Thus, the court will discuss

---

[30]  156 F.3d at 603.

[31]  *Id.*; *see also In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

[32]  *In re Keaty*, 397 F.3d at 270 (*citing In re Miller*, 156 F.3d at 606).

[33]  *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998).

collateral estoppel as it applies to nondischargability proceedings and state court

judgments.

### 1.     Collateral Estoppel

In *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60L.Ed.2d 767 (1979) the United

States Supreme Court addressed whether the principle of *res judicata* applied to the

bankruptcy courts' duty to decide dischargeability cases in which there was already a

state court judgment.  In deciding that the bankruptcy courts had an obligation to review

not just the state court judgment and record, but to determine the dischargeability of a

debt itself, the Court touched upon collateral estoppel in a footnote:

> If, in the course of adjudicating a state-law question, a state court should
> determine factual issues using standards identical to those of § 17 [of the
> Bankruptcy Act], then collateral estoppel, in the absence of countervailing
> statutory policy, would bar relitigation of those issues in the bankruptcy
> court.[34]

In *Simpson v. Shuler,* 722 F.2d 1253 (5th Cir. 1984), the United States Fifth Circuit

Court of Appeals determined that where a state court had already made a factual finding

in a case that was actually litigated, a bankruptcy court should not relitigate the entire

case.[35]  The *Shuler* court further held that in the Fifth Circuit, the requirements for the

application of the doctrine of collateral estoppel are:  1) The issue to be precluded must be

identical to that involved in the prior action; 2) in the prior action the issue must have

been actually litigated; and 3) the determination made of the issue in the prior action must

---

[34] *Brown v. Felsen,* 442 U.S. at 139, n. 10.

[35] *Simpson v. Shuler,* 722 F.2d at 1256.

have been necessary to the resulting judgment.[36]  In later cases, the Fifth Circuit has

continued to use this same test but has added that the bankruptcy court should look to the

underlying preclusion law for the state in which the judgment was rendered to determine

whether collateral estoppel should apply.[37]  Louisiana Revised Statute 13:4231(3)

addresses issue preclusion, stating, "A judgment in favor of either the plaintiff or the

defendant is conclusive, in any subsequent action between them, with respect to any issue

actually litigated and determined if its determination was essential to that judgment."

This is essentially the same as the test outlined by the Fifth Circuit.

The Fifth Circuit, while endorsing the use of collateral estoppel to prevent the

relitigation of issues already tried, has quite narrowly defined when the doctrine is

applicable:

> Hence, only in limited circumstances may bankruptcy courts defer to the
> doctrine of collateral estoppel and thereby ignore Congress' mandate to
> provide plenary review of dischargeability issues.  Collateral estoppel
> applies in bankruptcy courts only if, *inter alia*, the first court has made
> specific, subordinate, factual findings on the identical dischargeability issue
> in question-that is, an issue which encompasses the same *prima facie*
> elements as the bankruptcy issue-and the facts supporting the court's
> finding are discernable from that court's record.[38]

In *Matter of Gupta*, 394 F.3d 347 (5th Cir. 2004), the Fifth Circuit reversed and remanded

a bankruptcy court's decision that a judgment, which had been rendered after a three day

---

[36]  *Id*. at 1256, n. 2.

[37]  *In re Garner,* 56 F.3d 677, 679 (5th Cir. 1995).

[38]  *In re Dennis*, 25 F.3d 274, 278 (5th Cir. 1994).

jury trial where the jury had found the defendant, and later debtor, had breached his

fiduciary duty to the plaintiff/creditor, was entitled to preclusive effect in the creditor's

dischargeability action.  In *Gupta,* the creditor brought the action under § 523(a)(4) of the

Bankruptcy Code, which excepts from discharge debts for fraud or defalcation while

acting in a fiduciary capacity, and the state court jury specifically found that the debtor

had breached a fiduciary duty to the creditor.  Nonetheless, *Gupta* held that because the

state court proceeding had not specifically found that the debtor was a managing partner

and not a co-equal partner, the bankruptcy court's holding that the debtor was a managing

partner instead of a co-equal partner was a finding that was not supported by the state

court proceeding, and so collateral estoppel could not apply.[39]  Thus, in the Fifth Circuit,

collateral estoppel does apply, but in applying it the bankruptcy court must be very

careful not to step outside the boundaries of what the state court actually decided when

reviewing only the record of the state court.

Here, the civil judgment against the debtor is for intentional infliction of emotional

distress, civil conspiracy and conversion.  In the transcript the state court judge states, in

pertinent part:

> [T]his court has found, and makes a finding of fact, that there was
> credible and compelling testimony by Mr. and Mrs. Gallinghouse, as well
> as certain un-rebutted testimony of experts and fact witnesses and thus, that
> the Gallinghouse entities and Mr. and Mrs. Gallinghouse have proven by a

---

[39]  *Gupta*, 394 F.3d at 350-51.  Prior Fifth Circuit case law had found that co-equal
partners are not fiduciaries to each other for purposes of § 523(a)(4), and the bankruptcy court's
finding that Gupta was a managing partner was not based on any additional evidence outside of
what could be found in the state court record.

preponderance of the evidence, the following causes of action and only the
following causes of action. As to William Black, intentional infliction of
emotional distress, civil conspiracy and conversion. As to Deborah Black,
intentional infliction of emotional distress, civil conspiracy, conversion,
fraud, breach of fiduciary duty, and breach of fidelity....

Turning now to the damages with regard to the intentional infliction
of emotional distress from the ongoing litigation and such. This Court
makes a special damages finding of $193,649.39, expenses, due to
litigation. This Court also makes a finding of fact that intentional infliction
of emotional distress is only reserved for those most extreme circumstances
and those most extreme intended consequences. Thus, general damages in
the form of mental anguish, suffering and the like, are awarded to Walter
Gallinghouse in the amount of $100,000.00; and to Joanne Gallinghouse in
the amount of $100,000.00. The itemization from the interntional infliction
of emotional distress is then – my subtotal is $393,649.39

With regard to conversion, this Court makes the finding that other
courts have already found, that the amount and itemization of damages from
the conversion is $154,154.20.[40]

The Gallinghouses assert confidently that the above findings by the state court judge

require that collateral estoppel be applied here and that doctrine bars a retrial by this court

as to whether Mr. Black's actions constitute a willful and malicious act on the part of Mr.

Black. This requires an in depth analysis of the state court finding that there was, by

William Black, an intentional infliction of emotional distress, civil conspiracy, and

conversion. Treating the state court's findings in reverse order:

### a.     Conversion

The Louisiana Supreme Court set forth the elements of conversion in *Dual
Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So. 2d 853 (La. 1998) as follows:

---

[40] Trial Exhibit 244.

> A conversion is committed when any of the following occurs: 1) possession
> is acquired in an unauthorized manner; 2) the chattel is removed from one
> place to another with the intent to exercise control over it; 3) possession of
> the chattel is transferred without authority; 4) possession is withheld from
> the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel
> is used improperly; or 7) ownership is asserted over the chattel.

It seems clear to this court that the elements of conversion are not sufficiently identical to the elements required to find a debt nondischargable under § 523(a)(6).  As stated above, Fifth Circuit cases setting forth the elements of § 523(a)(6) hold that an injury is "willful" where there is either an objective substantial certainty of harm or a subjective motive to cause harm," and that an injury is "malicious" if it is "an act done with the actual intent to cause injury."  The elements of conversion under Louisiana law do not require showing this type of intent to cause injury or harm.  Because that intent is an integral part of proving a § 523(a)(6) case, the state court judgment of conversion along with the transcript of the proceedings upon which the Gallinghouses rely to prove nondischargability as to the conversion portion of the judgment are not sufficient to do so.

### b.    Civil conspiracy

Louisiana Civil Code Article 2324 provides: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."

The state court made a finding of civil conspiracy, but did not assign any damages to that count.  The issue of whether the civil conspiracy count was dischargeable was not briefed or argued in this court and no law is cited to support an argument that a finding of

civil conspiracy by the state court requires this court to make a finding of willful and malicious injury under § 523(a)(6).

### c.    Intentional infliction of emotional distress

The Louisiana Supreme Court set forth the elements of intentional infliction of emotional distress in *White v. Monsanto* 585 So.2d 1205 (La. 1991) as follows: The elements of intentional infliction of emotional distress are 1) that the conduct of the defendant was extreme and outrageous; 2) that the emotional distress suffered by the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

There may be closer nexus between the elements of § 523(a)(6) and the intentional infliction of emotional distress under Louisiana law than to conversion or civil conspiracy, discussed *supra*.  At trial, the evidence presented was insufficient to give the court an understanding of exactly what Mr. Black had done that resulted in the state court's finding that he was liable for the intentional infliction of emotional distress. Additionally, the state court judgment for intentional infliction of emotional distress was against both Mr. and Mrs. Black, and the state court judge's oral reasons did not specify which of them had committed the intentional acts that led to his judgment.  Without a more complete record, or more comprehensive reasons for the judgment, it is impossible for this court to know whether the actions of *only* Mr. Black were such that he alone caused a willful and malicious injury under § 523(a)(6).

21

For example, were the acts the state court judge found to be so extreme that they resulted in a finding of intentional infliction of emotional distress related to Mr. Black sharing in the proceeds of his wife's embezzlement?  The result of his actions in filing the defamation suit?  The result of acts by Mrs. Black for which the state court judge determined that the couple should share responsibility?  Something else the court hasn't guessed at?  The point is that this court does not know, and cannot presume to know from the record before it, what acts Mr. Black, and not Mrs. Black, committed that caused the intentional infliction of emotional distress to the Gallinghouses.[41]

Because the aim of the Bankruptcy Code is to give debtors a fresh start, discharge exceptions should be narrowly construed in favor of the debtor.[42]  Therefore, the party asserting that a debt is nondischargeable must prove its claim by a preponderance of the evidence.[43]  The court finds that the Gallinghouses did not present enough evidence to prove their non-dischargeability claim against *only* Mr. Black by a preponderance of the evidence, and their complaint alleging non-dischargeability under § 523(a)(6) is dismissed.

### D.    The remaining claims under § 523(a).

The Gallinghouses' complaint also alleges non-dischargeability under other

---

[41]  Mrs. Black is not a debtor in this case, so her actions have no bearing on the dischargeability of Mr. Black's debt in his bankruptcy case.

[42]  *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998).

[43]  *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

subsections of section 523.  None of those subsections apply here, other than § 523(a)(6)

discussed *supra*; they were not addressed by the parties at the trial; and they were not

argued in the parties briefs.  Accordingly, the court dismisses the claims under §§

523(a)(4), (7), (13) and (17).

## III.  <u>Conclusion</u>

For the reasons stated above, the court dismisses both complaints, allows proof of

claim number 2 as an unsecured claim, and allows proofs of claim 3 and 4 as outlined in

that part of the opinion, *supra*.  A separate judgment will be entered.

New Orleans, Louisiana, September 26, 2016.

Jerry A. Brown
U.S. Bankruptcy Judge